PS

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

WILLIAM E. KENYON,

          Plaintiff,

      -v-                              16-CV-6510-FPG
                                          DECISION AND ORDER
JOE WEBER, BISHOP, JOHN DOE #1,
JOHN DOE #2, JOH DOE #3, DR.
LASKOWSKI, DR. ABBEY, DR. RAO,

          Defendants.

_____

## INTRODUCTION

*Pro se* Plaintiff William E. Kenyon, an inmate of the Five Points Correctional Facility who was incarcerated at the Attica Correctional Facility ("ACF") at the time of the events alleged in the Complaint, has filed this action seeking relief under 42 U.S.C. § 1983 and has both requested permission to proceed *in forma pauperis* and filed a signed Authorization. ECF Nos. 1, 2. He has also moved for the appointment of counsel. ECF No. 3. Initially, the Court notes that Plaintiff filed this action using the Form Complaint for Filing a Prisoner Civil Rights Action under 42 U.S.C. § 1983 (ECF No. 1, at 1-5) and attached to the Form Complaint an Affidavit that sets forth the relevant allegations (*id.,* at 6-13). Accordingly, the operative pleading in this matter is both the Form Complaint and Affidavit. *See Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) ("the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.").

Plaintiff claims his Eighth Amendment rights were violated by Defendants' deliberate indifference to a dangerous working condition that existed in the Metal Shop at ACF and led to a "ripped" hamstring caused by a fall in the Metal Shop. For the reasons discussed below,

1

Plaintiff's request to proceed as a poor person (ECF No. 2) is granted, but unless Plaintiff files an amended complaint as directed below, some of his claims will be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  Plaintiff's request for the appointment of counsel (ECF No. 3) is denied without prejudice as premature.

## DISCUSSION

Because Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization with respect to this action, Plaintiff is granted permission to proceed *in forma pauperis*.

Title 28, United States Code, Sections 1915(e)(2)(B) and 1915A(a) require the Court to conduct an initial screening of this Complaint.  In evaluating the Complaint, the Court must accept as true all of the factual allegations and must draw all reasonable inferences in Plaintiff's favor.  *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003).  While "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure.  *Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004).  "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  Generally, the Court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas v. Dixon,* 480 F.3d 636, 639 (2d Cir. 2007).

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997). Based on its evaluation of the Complaint, the Court finds that Plaintiff's claim alleging a denial of adequate medical care must be dismissed unless he files an amended complaint as directed below.

**A. PLAINTIFF'S ALLEGATIONS**

**1. The Fall**

Plaintiff alleges that he worked in the Metal Shop at ACF shortly after his arrival there in 2011 and up until his transfer in 2014. While working in the "Pre-Treat" program, there was always water on the floor. There were three huge tanks in the Shop filled with water. As part of the process of manufacturing lockers, sheets of metal were hung on a conveyor-like belt for preparation for painting. The tanks were in a half-enclosed area where the metal sheets were sprayed clean before painting and water was all over the place. On the date of the accident, July 19, 2013, Plaintiff was walking through the Metal Shop in order to fix something that was falling off a hook attached to the conveyor-like belt holding the metal sheets. This required him to take a 20-inch step down to a flat piece of metal approximately four feet by four feet, which was used to roll heavy equipment over. This is presumably when and where Plaintiff fell.

Plaintiff had in the past informed Defendant Joe Weber, Metal Shop Area Supervisor, this condition was dangerous and Plaintiff had suggested that some dirt be mixed with paint in order to reduce the slipperiness of the spot. Weber always said he would get to it "some day." Plaintiff heard from other workers after the accident that the work area had been painted with

sand paint and that, after a few months when we was back to work, stairs were added to both sides of the work area.   ECF No. 1, at 6-7.[1]   Plaintiff claims that John Doe #3, ACF's Superintendent, visited the Metal Shop weekly and witnessed the inmates stepping up and down in the area in which he fell but never directed the Metal Shop Supervisor and Staff to correct the dangerous condition.   *Id.,* at 12.   Plaintiff names Defendants Weber, Bishop, Metal Shop Supervisor, John Doe #1, Metal Shop Acting Area Supervisor, and John Doe #3, ACF Superintendent on this claim.   *Id.*, at 11.

## 2.  Medical Care

After the fall, Plaintiff was in excruciating pain and taken to ACF's Emergency Room where a nurse examined his leg and advised him he had "ripped [his] hamstring in half."  He was then taken to Warsaw Hospital where the doctor on call advised him that his leg was too swollen to perform an MRI or any other procedure or treatment and that once the swelling went down ACF could bring him back to the Hospital for an MRI.  Plaintiff was advised to stay off his leg for four weeks and try to go back to work.  He was provided crutches.  After four weeks he tried to return to work but was not able to because of the pain and he was placed on two weeks of Medical Keeplock to recuperate further.  *Id.,* at 7-8.

Plaintiff claims that the medical staff at ACF and the outside hospital knew he had a serious injury but did nothing to treat it.  He never returned to the Hospital for an MRI.  Plaintiff claims that three years after the fall he is still in daily pain and cannot run or play handball as he had before the injury.  *Id.*, at 9.  In response to a Grievance submitted by Plaintiff, ACF's Medical Staff lied when it indicated that Plaintiff had seen a doctor on September 5, 2013.  He did see Defendant Dr. Laskowski on that date, but the Doctor discussed only Plaintiff's heartburn

---

[1]      Page references are to those generated by the Court's Case Management and Electronic Case Filing System ("CM/ECF").

and changed his heartburn medication.  *Id.*, at 9.  Plaintiff further alleges that ACF's

Superintendent, who is identified in the Grievance Form attached to the Complaint as M. Bradt

(ECF No. 1-1 at 2),[2] lied when he claimed that Plaintiff had seen the  Doctor on September 5,

2013.  ECF No. 1, at 9.  The Central Office Review Committee ("CORC") reviewed Plaintiff's

appeal from the Superintendent's Grievance Decision, and stated that Plaintiff had also seen a

doctor on July 29, 2013, but Plaintiff claims that, while he did see a doctor on that date,

Defendant Dr. Abbey, a surgeon, the only thing discussed during the visit was Plaintiff's hernia.

*Id.*, at 9.  The CORC indicated that following the fall, Plaintiff was seen at an outside hospital

and diagnosed with a muscle strain and was later seen by his provider at ACF on July 29,

September 5 and 19, and November 22, 2013.  ECF No. 11-1, at 5.  Plaintiff states that he saw

Dr. Abbey again on November 22, 2013, but the only issue discussed was his hernia.  ECF No. 1,

at 10.)

Plaintiff claims that he is still in pain, never had an MRI, and no one has "explored" the

damage to his leg.  He has not been provided with physical therapy or follow-up care to examine

the damage to his leg.

## B.  EIGHTH AMENDMENT CLAIMS

### 1.  Conditions of Confinement

The standard for a conditions of confinement claim under the Eighth Amendment are

well-established.  A plaintiff must allege: (1) the conditions were so serious that they constituted

a denial of the "minimal civilized measure of life's necessities," and (2) the prison officials acted

with "deliberate indifference."  *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991).  This standard

encompasses both an objective and subjective prong.  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d

---

[2]       The Clerk of Court is directed to amend the caption of this action by substituting "John Doe #3"
with "M. Bradt, Superintendent, Attica Correctional Facility."

Cir. 1994).   Under the objective prong, a plaintiff must allege a deprivation "sufficiently serious" to constitute a constitutional violation.  *Id.* at 66.  This prong may be established by alleging that "prison work duties created a serious risk of serious injury."  *Murray v. Michael*, No. 9:03-CV-1434, 2005 WL 2204985, at *12 (N.D.N.Y., Sept. 7, 2005) (citation omitted); *see also Bauman v. Walsh*, 36 F. Supp. 2d 508, 513-14 (N.D.N.Y. 1999).

The subjective prong goes to the prison officials' "culpable state of mind," *Hathaway*, 37 F.3d at 66, and is one of "deliberate indifference."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).   Deliberate indifference "requires more than negligence, but less than conduct undertaken for the very purpose of causing harm."  *Hathaway*, 37 F.3d at 66.  A prison official acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety."  *Farmer*, 511 U.S. at 837.  Prison officials "may be found free from liability if they responded reasonably to the risk."  *Id.* at 844.  "A plaintiff is not required to show that a defendant acted or failed to act 'for the very purpose of causing harm or with knowledge that harm will result,' but must show that the official was aware of facts from which one could infer that 'a substantial risk of serious harm' exists, and that the official drew that inference."  *Porter v. Young*, No. 9:11-CV-0848 (GTS/ATB), 2013 WL 4080602, at *6 (N.D.N.Y Apr. 13, 2013).

Additionally, in order to establish personal liability against a prison official for a constitutional violation, it must be shown that the official was personally involved in the alleged constitutional violation.  *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).  A defendant's personal involvement may be established by demonstrating that the defendant directly participated in the event, learned of the egregious wrong and failed to correct it, created or allowed a policy to exist that harmed the plaintiff, or acted with deliberate indifference or gross negligence in managing subordinates.  *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).

In *Gill v. Mooney*, 824 F.2d 192 (2d Cir. 1987), the Second Circuit addressed the issue of deliberate indifference in a prison workplace.  Gill, a prisoner, had alleged that he fell off a ladder while working in a "State Shop" and injured his back.  He claimed that he was ordered by a correctional office to continue working on the ladder despite informing the correctional officer that the ladder was unsafe.  The Second Circuit "held that the [Gill] had demonstrated deliberate indifference because his allegations, when liberally construed, 'involve[d] more than ordinary lack of due care for the prisoner's interests or safety.' " *Bauman*, 36 F. Supp. 2d at 514 (quoting *Gill*, 824 F.2d at 195 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).  "In contrast, the [Second Circuit] dismissed [Gill]'s complaint against a second corrections officer because it included no allegations that the officer had notice of the unsafe condition." *Id.* (citing *Gill*, 824 F.2d at 195).

Taking the facts alleged in the Complaint as true for this initial screening, the Court concludes that Plaintiff has sufficiently pled both the objective and subjective components of the deliberate indifference standard and that this claim may proceed to service against Weber, Bishop, Metal Shop Supervisor, John Doe #1, Acting Metal Shop Area Supervisor, and Bradt. Plaintiff alleges that as far back as 2011, at least two years before the fall, there always was water on the floor of the work area caused by the three tanks of water and the spraying of the metal sheets before painting and that he often had to fix something on the conveyor-like belt that required him to step down on a small piece of metal that was slippery from the water.  He also alleged that in the past he had advised Area Supervisor Weber of the dangerous condition and Weber responded he would "get to it some day."  ECF No. 1, at 7.  He also alleges that Superintendent Bradt (John Doe #3), made weekly visits of the work area and witnessed inmates "step up and down this area … and did not force Metal Shop Supervisor and Staff this was a

[d]angerous and [p]otential life threatening part of the Metal Shop." *Id.*, at 12. While Plaintiff makes no specific allegation that Bishop, Metal Shop Supervisor, and John Doe #1, Acting Area Supervisor, actually knew of the dangerous condition and took no action to correct it, the Court must liberally construe the allegations of the Complaint. In so doing, the Court finds that Plaintiff plausibly alleges that these Defendants were aware of the dangerous condition, but took no action to correct it.

The Court recognizes that this appears to be a workplace accident more akin to a negligence claim, but the allegations, liberally construed, are sufficient at this stage of the litigation to allow the claim to proceed to service. *See, e.g.*, *McEachin v. McGuiniss*, 357 F.3d 197, 200 (2d Cir. 2004) ("We have frequently reiterated that '[s]ua *sponte* dismissals of *pro se* prisoner petitions which contain non-frivolous claims without requiring service upon respondents or granting leave to amend is disfavored by this Court.'").

### 2. Inadequate Medical Care

Plaintiff also claims that his injury was not adequately treated either at the time of the fall or following the fall. After the initial fall, Plaintiff claims that a nurse at ACF advised him that he ripped his hamstring in half and that the Doctor at Warsaw Hospital advised him that until the swelling resolved there could be no diagnostic procedure, such as an MRI, performed. He claims specifically that he was never returned to the Hospital for an MRI by ACF and that, despite claims to the contrary by ACF officials, including Defendants Superintendent Bradt and Dr. Laskowki, he did not receive treatment for his leg at ACF. The visits with Dr. Laskowski and Dr. Abbey in the weeks and months following the fall did not address his leg injury but rather addressed his heartburn and hernia.

Similar to the standard set forth above for an Eighth Amendment violation based on an unconstitutional conditions of confinement claim, in order to establish a Eighth Amendment violation for inadequate medical care, a plaintiff must show deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 427 U.S. 97, 106 (1976); *see also Harrison v. Barkley*, 219 F.3d 132, 136-137 (2d Cir. 2000) ("A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'"). This standard too contains an objective—serious medical need—and subjective—deliberate indifference—component. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991).

The Second Circuit has observed that:

> [medical] conditions ... vary in severity and ... a decision to leave a condition untreated will be constitutional or not depending on the facts of the particular case. Thus, a prisoner with a hang-nail has no constitutional right to treatment, but if prison officials deliberately ignore an infected gash, "the failure to provide appropriate treatment might well violate the Eighth Amendment."

*Harrison*, 219 F.3d at 136-37 (quoting *Chance*, 143 F.3d at 702). "Factors that have been considered include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance*, 143 F.3d at 701–02 (quotation omitted).

"A [prisoner's] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. Rather, the plaintiff must allege conduct that is "repugnant to the conscience of mankind," *id.* at 102, or "incompatible with the evolving standards of decency that mark the progress of a maturing society." *Id.* at 105-06. In other

words, allegations of medical malpractice do not state a constitutional claim. *Id.* at 106; *Chance*, 143 F.3d at 703-04.

Likewise, an inmate's "mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703. Courts have repeatedly held that a prisoner does not have an absolute right to the treatment of his choice. *See Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986).

Given the situation described by Plaintiff, including that he was advised he "ripped" his hamstring "in half," continues to have pain daily and cannot perform certain activities he was able to perform before the injury, and liberally construing these allegations, the Court finds that Plaintiff has, at this stage in the litigation, described a serious medical need. The Court also finds, however, that the allegations do not suggest any degree of deliberateness on the part of the Defendants—John Doe #2, Primary Care Provider, Bradt, Dr. Laskowski, Dr. Abbey and Dr. Rao—and Plaintiff has therefore failed to allege a constitutional violation. Plaintiff's medical claims must be dismissed, but without prejudice to the filing of an amended complaint.

Further, the allegations against John Doe #2, Primary Care Provider, fail to sufficiently allege that he or she was personally involved in the alleged denial of medical care. *See Colon*, 58 F.3d at 873. There are no specific allegations that John Doe #2 was personally involved in Plaintiff's treatment or lack thereof. If John Doe #2 was personally involved, Plaintiff's amended complaint must include specific allegations against John Doe #2, if facts exist to make such allegations, as to how he was personally involved in the alleged deliberate indifference to Plaintiff's serious medical need.

### C.  John Doe Defendants

Plaintiff has named a number of John Doe Defendants in the Complaint and provided their titles or positions. *See* ECF No. 1 at 11.  Pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d. Cir. 1997), the Court requests that the New York State Attorney General's Office ascertain the full names of the John Doe Defendants Plaintiff seeks to sue. The Attorney General's Office is also requested to provide the addresses where all of these Defendants can currently be served. The Attorney General's Office need not undertake to defend or indemnify these individuals at this juncture.  This order merely provides a means by which Plaintiff may name and properly serve these Defendants.  Once this information is provided, Plaintiff's Complaint shall be deemed amended to reflect the full names of the Defendants.

The New York State Attorney General's Office is hereby requested to produce the information specified above regarding the identities of the John Doe Defendants to the Court's Pro Se Paralegal, 2120 Kenneth B. Keating Federal Building, 100 State Street, Rochester, New York 14614 by **April 21, 2017**.

The Clerk of the Court is also directed to forward a copy of this Order by email to Ted O'Brien, Assistant Attorney General in Charge, Rochester Regional Office <Ted.O'Brien@ag.ny.gov>.

### D.  Appointment of Counsel

Plaintiff has moved for the assignment of counsel. ECF No. 3.  In deciding whether to appoint counsel, the Court should first determine whether the indigent's position seems likely to be of substance, and if the claim meets this threshold requirement, the court should then consider a number of other factors in making its determination. *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986).  This action was only recently commenced.  Plaintiff has been directed to amend

the Complaint and Defendants have not yet responded to the allegations contained in the Complaint, and the only facts upon which this Court may base its decision as to whether this lawsuit is of substance are those portions of Plaintiff's Complaint wherein he states the facts surrounding his claim.   At this stage, the Court lacks sufficient information to consider the factors set forth in *Hodge*.   Plaintiff's request for appointment of counsel is therefore denied without prejudice as premature.

## **CONCLUSION**

Because Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization, his request to proceed *in forma pauperis* is granted.   For the reasons set forth above, Plaintiff's claims alleging inadequate medical care must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) unless he files an amended complaint by April 21, 2017 in which he includes the necessary allegations regarding the inadequate medical care claims as directed above and in a manner that complies with Rules 8 and 10 of the Federal Rules of Civil Procedure.

Plaintiff is advised that an amended complaint is intended to completely replace the prior complaint in the action.   "It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect."   *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).   Therefore, Plaintiff's amended complaint must include all of the allegations regarding the conditions of confinement and inadequate medical care claims, so that the amended complaint may stand alone as the sole complaint in this action which the Defendants could then answer.

If Plaintiff fails to file an amended complaint as directed, the inadequate medical care claims will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and service of the remaining conditions of confinement claim on the remaining Defendants shall be directed.

## ORDER

IT HEREBY IS ORDERED, that Plaintiff's Motion to proceed *in forma pauperis* (ECF No. 3) is GRANTED, and his Motion for appointment of counsel (ECF No. 2) is DENIED WITHOUT PREJUDICE;

FURTHER, the Clerk of Court is directed to amend the Caption of this action to name "M. Bradt, Superintendent, Attica Correctional Facility," in the place of John Doe #3;

FURTHER, that Plaintiff is granted leave to file an amended complaint only as directed above[3] by April 21, 2017;

FURTHER, the Clerk of Court is directed to send to Plaintiff with this Order a copy of the original Complaint, a blank § 1983 complaint form, and the instructions for preparing an amended complaint;

FURTHER, that in the event Plaintiff fails to file an amended complaint as directed above by April 21, 2017, the claims regarding inadequate medical care are dismissed with prejudice without further order of the Court and the Clerk of Court shall terminate Defendants John Doe #2, Dr. Laskowski, Dr. Abbey and Dr. Rao as parties to this action;

FURTHER, that in the event Plaintiff has failed to file an amended complaint by April 21, 2017, the Clerk of the Court is directed to cause the United States Marshals Service to serve copies of the Summons, Complaint, and this Order upon Defendants Joe Weber, Area Metal

---

[3]     Plaintiff is reminded that he must also include in this amended complaint his conditions of confinement claims. Because the amended complaint will become the sole complaint in the action, it is the only complaint which will be served on the parties. Failure to include these claims in it means that they will not be preserved for service on the Defendants.

Shop Supervisor, Attica Correctional Facility, M. Bradt, Superintendent, Attica Correctional Facility, and Bishop, Metal Shop Supervisor, Attica Correctional Facility, and, once identified, Defendant John Doe #1, without Plaintiff's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in Plaintiff's favor;[4]

FURTHER, that the New York State Attorney General's Office is hereby requested to produce the information specified above regarding the identities of the John Doe Defendants to the Court's Pro Se Paralegal, 2120 Kenneth B. Keating Federal Building, 100 State Street, Rochester, New York 14614 by April 21, 2017; and

FURTHER, that the Clerk of Court is directed to forward a copy of this Order by email to Ted O'Brien, Assistant Attorney General in Charge, Rochester Regional Office <Ted.O'Brien@ag.ny.gov>.


IT IS SO ORDERED.

DATED:      Rochester, New York
            March 20, 2017

                                    _____
                                    HON. FRANK P. GERACI, JR.
                                    Chief Judge
                                    United States District Court

---

[4]      Pursuant to a Standing Order of Court, filed September 28, 2012, a defendant will have 60 days to file and serve an answer or other responsive pleading, *see* Fed. R. Civ. P. 12(a)-(b), if the defendant and/or the defendant's agent has returned an Acknowledgment of Receipt of Service by Mail Form within 30 days of receipt of the Summons and Complaint by mail pursuant to N.Y.C.P.L.R. § 312-a.