UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────

WILLIAM E. KENYON,

                Plaintiff,

            v.

JOE WEBER, et al.,

    Defendants.
───────────────────────────────────

16-CV-6510-FPG

DECISION AND ORDER

## INTRODUCTION

*Pro se* Plaintiff William E. Kenyon, an inmate at Five Points Correctional Facility, brings this 42 U.S.C. § 1983 action against multiple defendants. ECF No. 1. Plaintiff alleges that Defendants Weber, Bradt, Bishop, and Krakowski violated his Eighth Amendment rights when they were deliberately indifferent to an unsafe working condition in the Attica Correctional Facility Metal Shop, which led to Plaintiff's fall and injuries on July 19, 2013. *Id.* Plaintiff suffered a "ripped" hamstring, and he alleges that Defendants Dr. Laskowski, Dr. Abbey, Dr. Rao, and Physician Assistant Schunk denied him adequate medical treatment. *Id.*

After screening the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, the Court: (1) granted Plaintiff leave to file an amended complaint as to his medical care claims because they failed to state a claim upon which relief may be granted; and (2) indicated that if Plaintiff did not file an amended complaint, the Clerk of Court would serve the Summons and Complaint on Defendants Weber, Bradt, Bishop, and Krakowski with respect to the unsafe working conditions claim.

On April 24, 2017, before the Court received and docketed Plaintiff's Amended Complaint, the Clerk of Court issued Summonses for Defendants Weber, Bradt, Krakowski, and Bishop, and forwarded the Summonses, copies of the Complaint, and Marshals' Service Forms to the United States Marshals for service. On April 28, 2017, the Clerk of Court docketed the Amended Complaint. ECF No. 6. The Amended Complaint, pursuant to the "prison mail box rule," is deemed "filed" on the date Plaintiff signed it—April 18, 2017. *See, e.g.*, *Houston v. Lack*, 487 U.S. 266, 271 (1988) (a *pro se* prisoner litigant's papers are deemed filed when they are placed a prison official's hands for mailing).

On July 18, 2017, Defendants Bradt, Bishop, Krakowski, and Weber moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 13. Defendants argue that the operative pleading in this action should be the Complaint and not the Amended Complaint. ECF No. 13-1 at 3.

As stated above, however, the Amended Complaint was timely "filed" on April 18, 2017; but it was not (and has not been) screened or served before Defendants filed their Motion to Dismiss. Defendants argue that "[e]ven if the Court allowed the Amended Complaint to be the operative document, the amended complaint fails to address the [inadequate medical care] issues raised by the Court's [Screening Order]." The Court previously dismissed the medical care claims with leave to amend because the Complaint did not allege deliberateness by any Defendant. ECF No. 4 at 8-10.

Because the Amended Complaint was timely filed and Defendants' Motion to Dismiss addresses the Amended Complaint, the Court finds that the Amended Complaint is the operative pleading and that the Motion to Dismiss will be construed as filed against the Amended

Complaint.[1]  Additionally, the Court did not screen the medical care claims in the Amended Complaint, and therefore it will screen those claims below.[2]  *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  For the reasons that follow, Defendants' Motion to Dismiss (ECF No. 13) is GRANTED IN PART and DENIED IN PART.  The Court also finds that the Amended Complaint fails to allege an actionable inadequate medical care claim and therefore that claim is dismissed.

## DISCUSSION

### I. Screening of Amended Complaint: Inadequate Medical Care Claim

Because Plaintiff was previously granted permission to proceed *in forma pauperis* (ECF No. 4), his Amended Complaint is subject to screening pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas*, 480 F.3d at 639.  The Court shall dismiss a complaint in a civil action where a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity if the Court determines at any time that the action (1) fails to state a claim upon which relief may be granted or (2) seeks monetary relief against a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A(b)(1)-(2).

After screening Plaintiff's initial Complaint, the Court found that it failed to state an Eighth Amendment claim of deliberate indifference because it did not allege deliberateness by Defendants Bradt, Dr. Rao, Dr. Laskowski, Dr. Abbey, and Physician Assistant Schunk.  There were also no

---

[1] As noted above, the Court allowed the claim related to Plaintiff's workplace fall and injury to proceed to service as pleaded.  The allegations in the Amended Complaint with respect to this claim are identical to the allegations pled in the original Complaint.  *See* ECF No. 1 at ¶¶ 1-8; ECF No. 6 at ¶¶ 1-8.  Although the filing of an amended complaint after the filing of a motion to dismiss the original complaint ordinarily renders that motion to dismiss moot, *see, e.g.*, *Azkour v. Haouzi*, No. 11 Civ. 5780 (RJS)(KNF), 2012 WL 2125951, at *2 (S.D.N.Y. June 12, 2012), it would be inefficient to now deny the motion to dismiss and require Defendants to re-file it against the Amended Complaint, which is identical to the Complaint with respect to the claim at issue.

[2] The Court is authorized to dismiss the case "*at any time*" if it determines that certain criteria are met.  *See* 28 U.S.C. § 1915(e)(2) (emphasis added).

allegations that Schunk was personally involved in the alleged denial of adequate medical care. Thus, the Court dismissed Plaintiff's inadequate medical care claims but granted him leave to amend. ECF No. 4 at 8-10, 13.

The Amended Complaint is nearly identical to the original Complaint. The relevant and new substantive allegations with respect to the inadequate medical care claims do not adequately plead a claim of deliberate indifference to a serious medical need.

After the injury on July 19, 2013, a nurse at Attica examined Plaintiff and advised him that he ripped his hamstring. He was transported to an outside hospital, and the hospital discharge instructions called for him to see a doctor at Attica and to return to the hospital for an MRI in five days. Plaintiff alleges that his primary care doctor must have known of these discharge instructions but ignored them. ECF No. 6 at ¶¶ 18-21. Plaintiff first saw a doctor at Attica on July 29, 2013, ten days after the injury. Defendant Dr. Abbey informed Plaintiff that he was aware of the injury, but Plaintiff alleges that Dr. Abbey was only interested in speaking about Plaintiff's hernia. *Id.* at ¶ 21. Plaintiff did not see another doctor for almost two months. On September 5, 2013, he saw Defendant Dr. Laskowski who did not talk to Plaintiff about his leg. A couple of weeks later, Plaintiff saw Defendant Dr. Rao, but Dr. Rao did not examine his leg and again only talked about Plaintiff's hernia surgery. *Id.* at ¶ 22. The original Complaint similarly alleged that Plaintiff had seen Drs. Abbey and Laskowski in the weeks and months after the injury, but that they did not address the injury; rather they were only interested in discussing Plaintiff's hernia. ECF No. 4 at 8. Plaintiff tried to return to work four weeks after the injury, but he could not work for another two weeks due to pain. He claims that he was in extreme pain but the Attica doctors did nothing to help him.

The Court finds that Plaintiff has not plausibly alleged that Defendants were deliberately indifferent to his hamstring injury. ECF No. 4 at 8-10. A plaintiff must allege conduct that is "repugnant to the conscience of mankind" or "incompatible with the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 427 U.S. 97, 102, 105-06 (1976). To establish that a defendant acted with a sufficiently culpable state of mind, "it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health," which "is a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). "This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Id.*

An inmate's disagreement over the proper treatment does not create a constitutional claim. *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). "The decisions of physicians regarding the care and safety of patients are entitled to a presumption of correctness." *Kulak v. City of New York,* 88 F.3d 63, 77 (2d Cir. 1996) (citation omitted); *see also Church v. Hegstrom,* 416 F.2d 449, 450 (2d Cir. 1969) (Section 1983 "does not authorize federal courts to interfere in the ordinary medical practices … of state prisons."). The allegations of the Amended Complaint simply do not support a claim that the Attica doctors had a mental state equivalent to criminal recklessness. The Amended Complaint parrots the standard for establishing an Eighth Amendment deliberate indifference claim, but this does not state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (A complaint is not required to have "'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation.") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal citations and quotation marks omitted).

Accordingly, the Court finds that the Amended Complaint fails to state a plausible claim of deliberate indifference to Plaintiff's leg injury and therefore this claim is dismissed with prejudice.

## II. Motion to Dismiss: Conditions of Confinement Claim

Defendants argue that the allegations related to Plaintiff's work-related accident fail to state an Eighth Amendment claim, and that Plaintiff failed to allege the personal involvement of Superintendent Bradt and Metal Shop Supervisors Bishop and Krakowski. ECF No. 13-1 at 3-10.

### A. Legal Standard

In reviewing a Rule 12(b)(6) motion to dismiss, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in Plaintiff's favor. *See Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). To survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 570). To meet this standard, the factual allegations must permit the court "to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

Because Plaintiff is proceeding *pro se*, the Court must "construe [the amended] complaint liberally and interpret it to raise the strongest arguments that it suggests." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotations omitted). "Even in a *pro se* case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citations and internal quotations omitted). Although the Court will draw the most favorable inferences that the complaint supports, it will not "invent factual allegations that [the plaintiff] has not pled." *Id.*

B.     **Plaintiff's Allegations**

Plaintiff alleges that he began working in the Metal Shop a few months after he arrived at Attica in January 2011. He alleges that in an area of the Shop where metal sheets are washed and prepped for painting, there was always water on the floor. Metal sheets hung from a conveyor-like belt and were sprayed with water before painting. The tanks were contained in a half-enclosed area and "the water was all over the place." ECF No. 1 at ¶¶ 3-5; ECF No. 6 at ¶¶ 3-5. On July 19, 2013, the day of the accident, Plaintiff was walking through the Shop—as he did 20-30 times each day—to fix something that was falling off a hook attached to the belt holding the metal sheets. Plaintiff alleges that he had to step down at least 20-inches onto a flat piece of metal that was used to roll heavy equipment over, and that he fell. ECF No. 1 at ¶ 6; ECF No. 6 at ¶ 6.

Plaintiff alleges that he informed Defendant Weber that the step down was dangerous and should be fixed. Plaintiff suggested mixing dirt and paint to reduce the slipperiness. Weber told Plaintiff he would "get to it someday." Plaintiff heard from other workers that Weber had the area painted with "sand paint" the day after the accident. A few months after Plaintiff returned to work, stairs were placed on both sides of the work area. ECF No. 1 at ¶¶ 7-8; ECF No. 6 at ¶¶ 7-8. Plaintiff alleges that Superintendent Bradt visited the Metal Shop "weekly" and saw inmates stepping up and down in the area where Plaintiff fell, but he did not instruct Weber or the staff to correct the condition. ECF No. 1 at ¶ 35.[3]

C.     **Eighth Amendment**

The Eighth Amendment protects prisoners from "cruel and unusual punishment" in the form of "unnecessary and wanton infliction of pain" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Estelle*, 429 U.S. at 104. The constitutional prohibition against

---

[3] This is the only allegation from the original Complaint regarding the work-related accident that Plaintiff does not re-allege in the Amended Complaint.

cruel and unusual punishment includes the right to be free from confinement conditions that impose an excessive risk to an inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 & 837 (1994); *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir.1994). To establish an Eighth Amendment claim based on unsafe working conditions, a plaintiff must establish that 1) he was incarcerated under conditions that posed a serious risk of serious harm, and 2) prison officials acted with deliberate indifference to his health or safety. *See Farmer*, 511 U.S. at 834.

"The deliberate indifference standard embodies both an objective and a subjective prong." *Hathaway*, 37 F.3d at 66; *see Chance*, 143 F.3d at 702. Under the objective prong, a plaintiff must allege a deprivation "sufficiently serious" to constitute a constitutional violation. *Id.* (quoting *Wilson*, 501 U.S. at 298). A plaintiff may satisfy the objective prong by alleging that his prison work duties created a substantial risk of serious injury. *Howard v. Headly*, 72 F. Supp. 2d 18, 23-24 (E.D.N.Y. 1999) (collecting cases). The subjective prong focuses on whether the prison official acted with "a sufficiently culpable state of mind." *Salahuddin*, 467 F.3d at 280 (citing *Wilson*, 501 U.S. at 300). "Deliberate indifference" requires more than negligence, but it does not require that the conduct was purposely meant to cause harm. *Farmer*, 511 U.S. at 835. For a prison official to act with deliberate indifference, he must know of and disregard an excessive risk to an inmate's health or safety. *Hathaway*, 37 F.3d at 66. The official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. *Id.*

In support of their Motion to Dismiss, Defendants rely primarily on the Court's decision in *Anderson v. Lalley*, No. 12-CV-6355-FPG, 2015 WL 6686586, at *10-11 (W.D.N.Y. Oct. 29, 2015). There, Plaintiff alleged that two prison deputies took down a shower curtain, removed the curtain rod, and jammed the rod into the drain. The deputies did not post a warning sign about the

hazardous condition. When Plaintiff showered, water sprayed everywhere because the shower curtain was missing and he slipped and fell. *Id.* at 1. After the Court re-screened the slip-and-fall claim, it found that "this case falls into a large family of cases of inmates bringing § 1983 claims after slipping and failing in, for the most part, showers. Courts routinely find that such slip-and-fall claims are mere negligence claims and not constitutional violations." *Anderson*, 2015 WL 6686586, at *10. Defendants concede that the facts in *Anderson* "are significantly different" then those presented here. ECF No. 13-1 at 7. They note that, in this case, there was an "alleged structural problem—a 20-[inch] step, not something alleged to have been created by any defendant." *Id.* Defendants submit that Plaintiff's claim is simply a tort claim that should have been brought in the New York State Court of Claims. ECF No. 13-1 at 7.

Plaintiff agrees that this case is "significantly different" from *Anderson*. ECF No. 14. He asserts that the 20-inch step down was a dangerous condition that Defendant Weber was aware of and which became even more dangerous when it was wet. Plaintiff argues that Weber's failure to correct the condition "was not negligent, but was delinquent in his duties; failing to protect plaintiff from harm[.]" ECF No. 14 at 12. Plaintiff also alleges that Krakowski was the "Alternate" Metal Shop Supervisor and was in charge on the day of Plaintiff's accident, and therefore Krakowski should have been aware of and checking for any dangerous conditions. *Id.* at 5.

The facts alleged in this case are analogous to the facts in *Gill v. Mooney*, 824 F.3d 192, 195 (2d Cir. 1987). There, the prisoner alleged that he was injured when he fell off a ladder that he told the defendant was unsafe. The defendant ordered the prisoner to continue working and the prisoner fell. The Second Circuit stated, "[l]iberally construed under *pro se* pleading standards, [the prisoner's] allegations against [the defendant] 'involve more than ordinary lack of due care

9

for the prisoner's interests or safety,' and therefore state a colorable claim under the Eighth and Fourteenth Amendments." *Id.* at 195 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

Plaintiff alleges that the dangerous condition was obvious when he first began working in the Metal Shop and that he informed Weber of the dangerous condition. He also alleges that Krakowski, as the "Alternate" Metal Shop Supervisor, and Superintendent Bradt knew of the dangerous condition but did not correct it. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (a prison official can be liable under Section 1983 if he failed to remedy the alleged wrong after learning of it). Thus, the Court finds that Plaintiff has alleged a plausible Eighth Amendment claim against Defendants Weber, Krakowski, and Bradt. Accordingly, the motion to dismiss as to those Defendants is DENIED.

However, Plaintiff does not allege that Defendant Bishop was personally involved in the incident, and therefore the motion to dismiss as to Bishop is GRANTED. *See, e.g.*, *Spencer v. Doe*, 139 F.3d 107, 112 (2d Cir. 1998) (noting that "a plaintiff must demonstrate the defendant's direct or personal involvement in the actions which are alleged to have caused the constitutional deprivation"); *Livingston v. Escrow*, No. 08-CV-6576-FPG, 2013 WL 5603870, at *6 (W.D.N.Y. Oct. 11, 2013) ("Personal involvement is a prerequisite for the assessment of damages in a § 1983 action against a supervisory official in his individual capacity.") (citation omitted).

### D. Qualified Immunity

Defendants also argue that even if there was a constitutional violation, they are entitled to qualified immunity. ECF No. 13-1 at 7-10. A public official sued under Section 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was 'clearly established" at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). "[A] defendant cannot be said to have violated a clearly established right unless

the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) (citing *Ashcroft*, 563 U.S. at 741).

At the time of the events alleged in the Amended Complaint, it was clearly established that prisoners have the right to be free from cruel and unusual punishment or, "more specifically, the right to be confined under safe conditions and not to be forced to work if doing so posed a risk to the inmate's safety." *Pacheco v. De Acevado*, Civ. No. 9:05-CV-998 (GTS/RFT), 2011 WL 2432929, at *12 (N.D.N.Y. Mar. 31, 2012) (citing *Gill*, 824 F.2d at 195).

"Even where a right is clearly established, an official is entitled to qualified immunity nevertheless if it 'was objectively reasonable for the [prison] official to believe that his acts did not violate th[at] right.'" *Connell v. Signoracci*, 153 F.3d 74, 79 (2d Cir. 1998) (quoting *Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir. 1991)). Taking as true Plaintiff's allegations that a dangerous condition existed and that Defendants were aware of it based on Plaintiff's complaints, the Court finds that it was not objectively reasonable for Defendants to fail to correct the condition. *See Howard*, 72 F. Supp. 2d at 125 (denying qualified immunity where plaintiff advised the defendants of his medical inability to safely perform his sanitation duties).

## **CONCLUSION**

Plaintiff's claim that Defendants Schunk, Dr. Laskowski, Dr. Abbey, Dr. Rao, and Bradt were deliberately indifferent to his serious medical needs is dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A.

Defendants' Motion to Dismiss is DENIED as to Defendants Weber, Krakowski, and Bradt and GRANTED as to Defendant Bishop. Defendants Weber, Krakowski, and Bradt must answer the Amended Complaint within 30 days of entry of this Order. *See* Fed. R. Civ. P. 12(a)(4).

Defendants Weber, Krakowski, and Bradt are the sole remaining Defendants in this case. The Clerk of Court is directed to terminate all other Defendants. The sole remaining cause of action is Plaintiff's Eighth Amendment claim for the dangerous workplace condition.

IT IS SO ORDERED.

Dated: December 21, 2017
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court